IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JO LYNN WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 6:16-cv-00995-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Plaintiff, Jo Lynn Walker, brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision is affirmed in part, reversed in part, and remanded for further proceedings.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On June 27, 2011, plaintiff, Jo Lynn Walker, filed for an application for SSI, alleging disability as of March 4, 1993 based on a number of conditions including fibromyalgia, carpal tunnel syndrome, arthritis, speech problems, bone spurs, past seizures, tendonitis, bursitis, Reynaud's of the right hand, anxiety and back problems. Tr. 234-40, 256, 264. Her application was denied initially and again upon reconsideration. Tr. 116-23, 127-28, 133-35. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 26, 2015. Tr. 31-67. The ALJ ordered a consultative physical examination and held a supplemental hearing on August 28, 2015. Tr. 53, 68-92. On September 3, 2015, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 13-30. The Appeals Council denied review on March 25, 2016. Tr. 1-7, 9-12. Accordingly, the ALJ's decision became the final decision of the agency from which plaintiff now seeks review. Plaintiff subsequently filed the present complaint in this Court. (doc. 1)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision so long as 1) it is based on proper legal standards and 2) its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The district court reviews the record as a whole, and must weigh both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If evidence presents the possibility for multiple interpretations and the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

# COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since June 27, 2011, her application date. Tr. 18; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia; lumbar spine degenerative disk disease; lumbosacral neuritis; facet anthropathy; asthma; adjustment disorder; depressive disorder, NOS; anxiety disorder, NOS; PTSD; bipolar disorder; pain disorder; and borderline personality disorder. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ found that plaintiff's impairments, whether considered singly or combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 19; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), with the following limitations: no more than standing and/or walking four hours out of an eight-hour work day, but no more than one hour at a time; no more than occasionally climbing ramps or stairs, stooping, kneeling, crouching, or crawling; never climbing ladders, ropes or scaffolds; no more than frequent bilateral reaching, handling, fingering, feeling, pushing, pulling, or bilateral foot control operation; must avoid concentrated

exposure to fumes, odors, dusts, gases, and poorly ventilated areas; simple instructions; no more than occasional interaction with coworkers and supervisors. Tr. 20; 20 C.F.R. §§ 404.1520(e). .

Tr. 21. At step four, the ALJ found that plaintiff has no past relevant, opining that while the record shows some earnings in the past 15 years, the claimant did not perform such work at substantial gainful activity levels. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f).

At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy. Tr. 24-25; 20 C.F.R. §§ 404.1520(a)(4)(v), (g). The ALJ based this decision on plaintiff's age, education, work experience, and RFC, and determined, pursuant to the vocation expert testimony, that plaintiff could have performed the requirements of occupations such as the following: addresser, polisher, and stuffer. Tr. 26. Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits.

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) improperly rejecting medical opinion evidence, namely the opinions of and (2) failing to provide clear and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom testimony. I address each argument in turn.

I. *Medical Opinion Evidence*

Plaintiff argues that that the ALJ erred in discounting the treating and examining source opinions from Julie Hargraves, LCSW; Hugh Henderson, MD; Anthony Glassman, MD.

*A. Dr. Glassman's Limitation Assessment*

In May 2015, plaintiff was referred by Disability Determination Services to Dr. Anthony Glassman, for a comprehensive physical examination. Following this examination, Dr. Glassman assessed a RFC to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for four hours total in an eight-hour workday and one hour each without rest; reach,

handle, finder feel, push, and pull occasionally; operate foot control frequently; stoop, kneel, crouch, crawl, and climb stairs and ramps occasionally; operate foot controls frequently; stoop kneel, crouch, crawl, and climb stairs and ramps occasionally; never balance or climb ladders or scaffolds; operate a motor vehicle frequently, with frequent exposure to humidity, wetness, dust, odors, fumes, pulmonary irritant, and extreme heat, occasional exposure to unprotected heights and moving mechanical parts, and no exposure to cold or vibrations. The ALJ rejected Dr. Glassman's assessed manipulative and balance limitation because the former was based entirely on the plaintiff's subjective complaints and reported history of single seizure. The ALJ found that these limitations were not supported by Dr. Glassman's own examination and the medical record as a whole. However, the ALJ gave great weight to the remainder of Dr. Glassman's function assessment, adopting it into the RFC.

Even if contradicted by another doctor, a treating or examining physician's opinion may only be rejected with specific and legitimate reasons supported by substantial evidence. *Garrision v. Colvin*, 759 F. 3d 995, 1012 (9th Cir. 2014.) Plaintiff avers that the ALJ erred in discounting Dr. Glassman's assessed manipulative and balance limitations because his examination supported the limitations.

I find that the ALJ reasonably rejected Dr. Glassman's manipulative and balance limitations as unsupported by the record evidence. A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Commissioner,* 169 F. 3d 595, 602 (9th Cir. 1999). Here, the ALJ provided sufficient support for her conclusion by noting that the rejected limitations were based on plaintiff's subjective complaints which were not supported by the medical record. Even Dr. Glassman noted that his assigned limitations in the RFC were based upon plaintiff's "subjective complaints

outweighing objective findings." Tr. 624. Plaintiff points to her apparent decreased grip strength noted during the examination as justifying the manipulative limitation. However, all other findings relating to this limitation were normal, and defendant accurately points out that the discussion of carpal tunnel syndrome by Dr. Glassman was based solely on plaintiff's subjective complaints. Regarding the balance limitation, the ALJ properly noted that the only support it was plaintiff's one self-reported stroke in 1996. Indeed no other findings indicate less than normal functioning concerning balance.

Having reviewed the record, I find that the ALJ provided specific and legitimate reasons sufficient to reject Dr. Glassman's opinion regard the balance and manipulative limitation.

  *B. Ms. Hargraves and Dr. Henderson's MFRC Report*

Plaintiff's first argues the ALJ failed to provide legally sufficient bases supported by substantial evidence to discount the March 2015 Medical Source Opinion which contained a Mental Residual Functional Capacity ("MRFC") Report. The MRFC is a check the box form which indicated that marked limitations "preclude[] the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 614. The report was signed by plaintiff's social worker, Julie Hargraves, LCSW, and treating psychologist Hugh Henderson, MD of Cow Creek Health and Wellness Center.[1]

Ms. Hargraves and Dr. Henderson assessed marked limitations in a number of areas, including, in plaintiff's ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal

---

[1] Plaintiff began treatment there in July 2012, and was assessed with diagnoses of PTSD, bipolar disorder, alcohol abuse in full sustained remission, and borderline personality disorder.

PAGE 6 – OPINION AND ORDER

workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain appropriate behavior and adhere to basic standards of neatness and cleanliness. The report contained a notation that "Ms. Walker will need more stabilization of medications & psychotherapy. She has been decompensating between sessions." Tr. 617.

The ALJ rejected the claims contained in the medical source opinion, because they were from Ms. Hargraves, and social workers are not considered an acceptable medical source. Moreover, the ALJ held that the marked limitations noted in the MRFC are wholly inconsistent with plaintiffs admitted normal activities of daily living, as well as her progress notes indicating her mental symptoms are stable with medications.

Plaintiff argues that the ALJ erred because the form was authored by both Ms. Hargraves and plaintiff's treating psychiatrist, Dr. Henderson, and, as such, was due great, if not controlling, weight. Plaintiff also disputes the ALJ's finding that the marked limitations in her ability to maintain attention and concentration for extended periods of time are inconsistent with plaintiffs reported normal activities of daily living, which include, house hold chores, driving a car, and shopping. Dr. Henderson and Ms. Hargraves subsequently noted in a October 30, 2015, post-decision letter,

> [p]erforming activities on a self-paced basis, followed by periods of rest, and intermittently depending on medical impairments may have been characterized as normal. However, Ms. Walker's activities have not been consistent with a capacity to sustain work activity on a set schedule. Her ability to sustain activity would be compromised further by a full-time work schedule and production demands, regardless of the job.

Tr. 748.

PAGE 7 – OPINION AND ORDER

Plaintiff also contests the ALJ statement that her mental symptoms are well controlled when she takes her medications. Plaintiff argues that those symptoms wax and wane, as is evidence by with GAF scores ranging from 31 to 52 throughout her alleged period of disability.[2] Further, plaintiff offers the statement of Ms. Hargraves and Dr. Henderson where they opine that "[b]eing stable on medications pertains to maintaining, no worsening. It is not evidence of capacity to sustain full time work activity, remain on task for extended periods of time, or consistently accept supervision." Tr. 748.

Defendant argues that while a treating physician's opinion is generally given the most weight, and may be controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimants case record.

In response, defendant discusses the difference between medical sources and what weight each should be afforded. Defendant is correct that a social work does not automatically express opinions on behalf of a supervising treating physician, and that a social workers sole opinion is no considered an acceptable medical source. However, that does not address the fact that the determinations contained in MFRC and medical source opinion were coauthored by Dr.

---

[2] A GAF score is rough estimate of an individual psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 31 to 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at time illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). A GAF score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.)" *Id.*

Henderson. Despite defendant's claim to the contrary, there is nothing vague about the post decision letter where Dr. Henderson and Ms. Hargrave state that the medical source statement were coauthored by both of them. While it is true the Dr. Henderson did not sign one part of the medical source opinion at the time, he did sign the MRFC and restated that its opinions were his own in the post-decision letter.

Defendant also argues that MRFC is still inconsistent with the record as noted by the ALJ. Specifically, defendant points to observation that plaintiff's mental health symptoms were stable with medications. Further, defendant reiterates that marked limitation in the MRFC remain inconsistent with Plaintiff's activities and inconsistent with treating notes, including those of Dr. Henderson. Defendant further notes that the ALJ gave great weight to Gregory Cole, Ph.D, who saw plaintiff in August 2013 and opined that she could perform simple routine and multi-step routine tasks. The ALJ opined that Dr. Cole's opinion was consistent with the record.

These arguments are not persuasive. There is evidence, through the GAF scores, that plaintiff's mental symptoms waxed and waned as she claimed. Further, defendant's arguments regard Dr. Henderson's notes amount to a post-hoc justification of the ALJ's decision. Finally it is unclear that ALJ understood that the opinions in the MFRC were from a competing examining source rather than plaintiff's social worker. Dr. Henderson was a treating, acceptable medical source, and he signed the MRFC. Further, in a joint statement with Ms. Hargraves it is specifically stated that they both authored the report, and there is ample evidence in the record to show that both treated plaintiff's mental disorders.

At the very least, the ALJ was required to consider that concurrence from a treating source, and she could only reject the opinion by providing sufficient reason for doing so based

on substantial evidence in the record. *Garrison,* at 1012. Therefore, the ALJ erred in not considering the MRFC and opinions of Dr. Henderson.

II. *Plaintiff's Symptom Testimony*

Plaintiff argues that the ALJ failed to provide adequate reasons under the "clear and convincing" standard to discredit plaintiff's testimony. *Garrison,* at 1015. Defendant argues the ALJ's disregard for the testimony is supported by substantial evidence and should be affirmed.

The Ninth Circuit applies a two-step approach when reviewing the ALJ's treatment of a plaintiff's symptom testimony. First, the ALJ evaluates "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1014 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991) (en banc)) (internal quotation marks omitted). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-15. This test is satisfied if the decision clearly shows that the ALJ did not arbitrarily discount the claimant's about her symptoms. *Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F. 3d 1155, 1163 (9th Cir. 2009). The clear and convincing standard does not permit second-guessing of a credibility finding supported by substantial evidence. *Thomas v. Barnhart,* 278 F. 3d 947, 959 (9th Cir. 2009).

Here, the ALJ found that objective medical evidence supported plaintiff's claim that she suffers from the impairments noted above, which could be expected to produce some of the symptoms she alleged. The ALJ then found, however, that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. The ALJ did not find, nor does defendant argue, that plaintiff malingered. Given these facts, the ALJ was

PAGE 10 – OPINION AND ORDER

required to support the rejection of plaintiff's symptom testimony with specific, clear and convincing reasons. I now turn to plaintiff's arguments.

First, plaintiff complains that the ALJ cherry picks evidence to show that plaintiff presented on numerous occasions with completely normal physical presentations. The ALJ rejected plaintiff's symptom testimony because although the medical record showed plaintiff had severe impairments of lumbar degenerative disc disease, fibromyalgia, and asthma, she found that plaintiff's statements concerning the intensity, persistence and limiting effects were not consistent with objective findings in the record. The ALJ noted findings showing mild lumbar spine pain, and that there are no MRI's in the record. Plaintiff correctly avers that MRI's were recommended by some physicians but that here insurance denied coverage for them. Her neurosurgeon recommended an MRI, but opined that surgery was unlikely to relieve her low back pain. He recommended that plaintiff exercises for mobility and strengthening and that she stop smoking.

Plaintiff argues that the overall record documents significant, ongoing lumbar pain consistent with her testimony. However, the record is adequate to support the ALJ's conclusion. In 2014, lumbar x-rays showed only mild degenerative disk disease. The ALJ also noted that in March 2012, Plaintiff exhibited no pain to direct palpation, some tenderness on the left, but good extension, flexion, and lateral movement. Two months later, Plaintiff exhibited no significant muscle pain, weakness, cramps, muscle wasting, tenderness, significant joint changes, and a normal gait. Various other physical presentations showed normal musculoskeletal examinations and minimal neurological findings. Plaintiff was also able to walk with a normal gait and ambulate with no assistive device.

Plaintiff also argues that the ALJ erred in rejecting plaintiff's testimony when noting that plaintiff's fibromyalgia was controlled with medication and that there are minimal tender points

PAGE 11 – OPINION AND ORDER

test in the medical record confirming that diagnosis. Plaintiff offers that her physicians did not regularly conduct tender point examinations, but that there is evidence of uncontrolled fibromyalgia found in the record, including in Dr. Glassman's examination. However, Dr. Glassman noted in his report that subjective complaints outweighed objective observations, and he noted the presence of Waddell signs. Moreover, the ALJ noted that the condition appeared to be controlled with Sertraline and Cyclobenzaprine. Plaintiff, primary care physician, Dr. Elaine Callahan, noted plaintiff's myofascial pain was only mildly limiting. Therefore, there was sufficient evidence to support this statement for the ALJ

Plaintiff next argues that the ALJ erred in rejecting plaintiffs tested based on evidence of mostly normal clinical presentation. The ALJ noted that Dr. Glassman indicated plaintiff was in no apparent distress, had no cognitive defects, and had a positive Waddell testing, which suggested symptom magnification. The examination by Dr. Glassman revealed no neurologic or cognitive dysfunction and while she did have diagnosis of fibromyalgia, her subjective complaints outweighed her objective findings. The ALJ opined that plaintiff's "allegations of disabling pain are simply inconsistent with the mostly mild objective medial finding in the record." Tr. 22. The ALJ also made note that plaintiff's pain allegations were not consistent with her activities of daily living which include household chores, driving a car, and shopping. Defendant also correctly notes that plaintiff attended community college, cared for her grandmother, and exercised by walking, though not as much as she would have like. Plaintiff notes that she experienced a period of homelessness, living in a tent for seven months. The ALJ questioned her specifically about her activity during this period during the hearing. Plaintiff's activities would seem to contradict her claims of disabling pain.

PAGE 12 – OPINION AND ORDER

Reviewing the record, and plaintiff's own testimony, I conclude that there is substantial evidence which reasonably supports the ALJ's conclusion on this point.

Finally, plaintiff objects to the ALJ rejecting plaintiff's testimony on the ground that that her bipolar disorder improved with treatment. Specifically, the ALJ noted that her symptoms appeared to improve when plaintiff was taking her psychotropic medication as prescribed and following through with psychotherapy. The record shows that plaintiff provided variable statements regarding her medication, and that she have missed doses. As noted above, plaintiff avers that the record shows her symptoms waxed and waned. Further Dr. Gregory Cole, Ph.D, reports were given great weight by the ALJ. Dr. Cole provided plaintiff with a GAF score of 58, which suggested moderate mental limitations. Further, Dr. Cole opined that that plaintiff could perform simple routine and simple multiple-step tasks, but would have difficulty interacting with others. Plaintiff also points out that Dr. Callahan assessed a GAF score of 40, and opined that there had been a distinct deterioration in Plaintiff's bipolar disorder, and recommended psychiatric evaluation. Tr. 467-70. However, the ALJ chose to give Dr. Callahan's GAF score little weight because she characterized it as only suggesting moderate mental limitations.

Though there are variable interpretations with regard to the ALJ finding that plaintiff's mental symptoms improved with treatment, I must conclude that the ALJ offered clear and convincing reasons for rejecting plaintiff's symptom testimony in total.

IV. *Type of Remand*

Under Ninth Circuit law, neither plaintiff's symptom testimony nor medical opinion contained in the MRFC should be credited as true on remand because further proceedings would be helpful to deal with conflict contained in the record. Before crediting erroneously rejected statements as true, a reviewing court must first determine that the ALJ committed a harmful legal

error, such as a finding that did not meet the appropriate legal standard and one that affected the ultimate disability decision. *Dominguez v. Colvin*, 808 F.3d 403, 407 (2015).

Yet in addition to finding harmful legal error, a reviewing court must also conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose. *Id.* I cannot draw that conclusion here.

Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate. Reviewing courts may not move from a finding of ALJ error "directly to an order requiring the payment of benefits without the intermediate step of analyzing whether, in fact the claimant is disabled. *Straus v. Comm'r of Soc. Sec. Admin.*, 635 F. 3d 1135, 1138. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Id.*

Further administrative proceedings will serve a useful purpose because it will make certain that the ALJ has accepted or rejected the opinion of Ms. Hargraves and Dr. Henderson and properly weighed those against the conflict medical opinions.

## CONCLUSION

The Commissioner's decision REVERSED, and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 30th day of September 2017.

*Ann Aiken*
Ann Aiken
United States District Judge